ROBERTSON, Justice,
for the Court:
I.
Several years ago his father died. On July 15, 1989, his mother and ten-year-old stepsister were murdered, and since then orphaned three-and-a-half-year-old Terry Jefferson has been caught up in a cross-country legal tug of war that commands of our courts Solomonic wisdom and action. The Chancery Court appointed Terry’s cousin his guardian, and this seems to satisfy his maternal kin. The problem is that this was done without notice to his paternal kin who, from California, raise great objection. For want of this notice, we reverse and remand.
II.
Terry R. Jefferson, III, was born in Flo-wood, Mississippi, on January 3, 1986, the son of Terry R. and Evelyn J. Jefferson, and lived with his mother in Jackson. Terry never knew his father who, seven months earlier, on June 7, 1985, was killed in a car-truck accident. Terry R. Jefferson, Sr., was buried in Colma, California, his original home. Terry’s mother, Evelyn, and Delores Jefferson, his paternal grandmother, decided that it was important that Terry grow up knowing his father’s side of the family. On May 27, 1989, with his mother’s full blessing and consent, Terry went to the San Francisco Bay area to visit his father’s mother, and he was supposed to stay until the first of July. At about this time, Delores Jefferson called and asked if Terry could stay until her birthday, which was near the end of July, and his mother, Evelyn, readily agreed.
On the night of July 15, 1989, an unknown assailant broke into the Jefferson home in Jackson and brutally murdered Evelyn Jefferson and Terry’s ten-year-old step-sister, Keisha, leaving Terry alone in the world.
Sophia Dixon, Terry’s 23-year-old cousin, called Delores Jefferson on Thursday, July 18, and told her what had happened and tried to make arrangements to get Terry home for his mother’s and sister’s funeral on Saturday. Delores Jefferson said she could not come to Mississippi and bring Terry. She said she would stay at home for her son’s (Terry’s father) birthday on which day she placed flowers on his grave. Several other alternatives were discussed but for whatever reason, Terry did not come back for the funeral and, insofar as the record reflects, has not been back to Mississippi since.
A few days later, Terry’s maternal kin got together to decide what to do. These were Rosie Nichols, Terry’s maternal grandmother, age 68 or 69; Helen Ford, Terry’s maternal aunt and his mother’s sister; and Sophia Dixon, Terry’s cousin and the daughter of Helen Ford. The three discovered that, under the laws of descent and distribution, Terry was the apparent heir of an estate which consisted largely of a residence in Jackson, personal effects, and the proceeds of an uninsured motorists tort claim his mother had pending at the *771 time of her death. They sought legal counsel who advised that a guardianship should be established.
Prior to Evelyn Jefferson’s death, Terry’s maternal kin had assisted in his care and nurture. It seems that Evelyn worked full-time at the Post Office, and, although Terry was regularly taken to a day care center, his maternal grandmother, Rosie Nichols, aunt, Helen Ford, and cousin, Sophia Dixon, often took care of him. These people decided that it would be best that Terry continue in as nearly the same environment as was possible. Sophia Dixon was married, had a young child of her own, and they all decided she was the appropriate person to take Terry in and become the official guardian of his person and estate.
On July 24, 1989 — nine days after Terry’s mother’s murder — Sophia Dixon commenced the present proceedings, filing with the Chancery Court for the First Judicial District of Hinds County a petition asking that a guardianship be established for Terry’s person and estate and that she be appointed guardian. Rosie Nichols and Helen Ford joined in the petition. No notice of these matters was given to Delores Jefferson, Terry’s then-48-year-old paternal grandmother, with whom Terry remained in California. According to custom and form, the Chancery Court on the same day entered its order approving the petition, creating the guardianship, and directing that the Clerk issue letters of guardianship to Sophia Dixon.[1]
Delores Jefferson secured Mississippi counsel, and on November 9, 1989, moved the Court to vacate its order appointing guardian and to proceed with the matter ab initio. Delores Jefferson’s principal ground was that she had been given no notice nor opportunity to be heard prior to the Chancery Court’s entry of the July 24, 1989, decree.
Together with her motion, Delores Jefferson presented an affidavit expressing her strong desire to have Terry stay in California with her. She stated that in the course of Terry’s visit to her she had developed a close relationship with him and had come to love him and care “only about his personal welfare.” Delores stated that she was employed with the Department of Social Services in San Francisco as a Social Worker, owned her own home, and was “better qualified” to serve as Terry’s guardian and custodian. She stated as well that she had enrolled Terry in a pre-school program in San Francisco. On November 22, 1989, the Chancery Court convened to hear Delores Jefferson’s motion, and, on December 12, 1989, the Court denied all relief. Thereafter, Delores Jefferson moved for reconsideration, and the Court denied that as well. She now perfects an appeal to this Court.
III.
There can be no serious question of the jurisdiction or venue of the Chancery Court of the First Judicial District of Hinds County, Mississippi. Terry’s state of domicile and residence at all times in his life was and is Hinds County, Mississippi. His visit to California in the eyes of the law was just that — a visit. Beyond this, Terry now holds a modest estate, the principal asset of which is a residential property in Jackson, Mississippi. The Chancery Court correctly took jurisdiction of the matter in July of 1989, notwithstanding Terry’s then-thought-temporary absence from the jurisdiction.
The question of notice to Delores Jefferson is another matter. According to the record, Terry’s next of kin were his two grandmothers, Rosie Nichols in Jackson and Delores Jefferson in San Francisco. When all is said and done, notice is all Delores Jefferson wishes, and she has stated via affidavit of her California counsel
*772 ... that she would honor any decision of the Mississippi courts provided that she received prior notice and an opportunity to be heard.
Guardianships such as this are regulated initially by statute. Miss.Code Ann. § 93-13-13 (Supp.1990) sets out certain procedures and gives
... preference in all cases to the natural guardian, or next of kin, if any apply, unless the applicant be manifestly unsuitable for the discharge of the duties.
Much is said of this and of the fact that Delores Jefferson is next of kin, outranking cousin Sophia Dixon and, no doubt, this is legally so.[2] The point does not carry us far, for Rosie Nichols here in Jackson is of equal rank with Delores Jefferson and, although for the moment, she has joined in the petition of Sophia Dixon, she could certainly step forward under this statute.
The statute does not identify the parties entitled to notice incident to the establishment of a guardianship for minor children. We are not without guidance, however.[3] We confronted a similar problem in In re Guardianship of Watson, 317 So.2d 30 (Miss.1975). Kenneth and Bernice Watson were fatally injured in an automobile accident, and, after their deaths, the maternal grandmother obtained ex parte a decree that she be the guardian of Kenneth and Bernice’s children. It seems that the children then went to live with the maternal grandmother. A month later, the paternal grandparents petitioned the Chancery Court to vacate the decree appointing guardian, but the petition was denied on grounds that the maternal grandmother had come to stand in loco parentis to the children and that the paternal grandparents were not entitled to prior notice of the guardianship proceedings.
On appeal, this Court reversed, holding first that
[t]he exigency of the circumstances, the relatively short time ... [during which the paternal grandmother had the children with her,] refutes, we think, the creation of an in loco parentis status carrying with it the exclusive right of custody and upbringing.
Watson, 317 So.2d at 33. The Court then confronted the fact that the statute “does not mandate service of process,” Watson, 317 So.2d at 33. The paternal grandparents, however, at the very least enjoyed eligibility for consideration under Section 93-13-13’s “next of kin” preference. That eligibility was necessarily rendered meaningless where they were not given reasonable advance notice and the opportunity to be heard prior to the commencement of the guardianship proceedings. This Court vacated the guardianship decree, reversed the judgment below, and directed that, upon remand,
... notice be given to the next of kin, the maternal and paternal grandparents, so that a guardian may be appointed to best serve the interest of these minors.
Watson, 317 So.2d at 33.
• Applied to this case, Watson required that, prior to final action on Sophia Dixon’s guardianship application of July 24, 1989, Delores Jefferson, the paternal grandmother, be given reasonable advance notice and the opportunity to be heard, not because Terry was then visiting her, nor because she had acquired any status of in loco parentis, nor because she loved Terry, but because she is an eligible next of kin within Section 93-13-13.
We have considered whether the November 22, 1989, hearing afforded Delores Jefferson the opportunity our law provides she must have. At that point in time, she was in the posture of one seeking to remove a guardian and as such, carried a heavy burden, above and beyond what would have been demanded of her had she been a party back on July 24, 1989. She was at a substantial disadvantage she *773 would not have suffered had she been before the Court asserting her points ab ini-tio. She is entitled to proceed without that disadvantage.
On the authority of Watson, the judgment below is vacated. Beyond that, the judgment of July 24, 1989, appointing guardian and the letters of guardianship issued thereupon are vacated and held for naught. With reasonable notice to all parties to these proceedings — and we find that by her November 7, 1989, petition, Delores Jefferson has made a general appearance in this matter — we remand to the Chancery Court and direct that it proceed as though the July 24, 1989, decree had never been entered and as though the subsequent proceedings before the courts of this state had never occurred.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.

. On the following day, July 25, 1989, Delores Jefferson filed in a California court a petition that she be appointed guardian of Terry R. Jefferson, III. We note these proceedings, but they are technically of no immediate concern. The California court appointed Delores Jefferson temporary guardian, pending investigation of her qualifications and receipt of objections from relatives in the second degree. Insofar as we are aware, no final action has been taken on that matter.

. See The Nolan Chart of Relationships and Degrees of Kindred According to the Civil Laws, reprinted in Owen v. State, 255 Ala. 354, 355, 51 So.2d 541, 542 (1951); cf. Matter of Estate of Ford, 552 So.2d 1065, 1066-67 (Miss.1989).

. We do not address the question whether the notice provisions of the Uniform Child Custody Jurisdiction Act, Miss.Code Ann. §§ 93-23-1, et seq. (Supp.1990), have application here. See Hill v. Hill, 481 So.2d 227 (Miss.1985).